PEOPLE v ACOSTA

Docket No. 81509. Submitted June 10, 1986, at Grand Rapids. Decided
    July 22, 1986. Leave to appeal applied for.

    Roberto Acosta was convicted by a jury in Berrien Circuit Court
    of possession with intent to deliver cocaine in any mixture of
    225 grams or more, but less than 650 grams and was sentenced
    to prison for not less than twenty years nor more than thirty
    years, as mandated by statute, Zoe S. Burkholz, J. Defendant
    appealed. *Held:*

        1. The trial court did not err in failing to order the produc-
    tion of a confidential police informant. Evidence produced at
    trial shows that defendant was aware of the informant's iden-
    tity without disclosure by the police. Even if the trial court
    should have ordered the disclosure and production of the infor-
    mant, any error in the refusal to do so is harmless under the
    circumstances of this case.

        2. The fact that the jury was instructed on two alternate
    theories of guilt and returned a verdict of guilty without
    specifying on which of the two theories the verdict was based
    does not mandate reversal. There was sufficient evidence to
    support a conviction under either of the two theories of guilt.

        3. Defendant's argument that cocaine should not be classified
    with heroin and other narcotics but rather with more pharma-
    cologically similar substances which carry lesser penalties for
    possession is rejected.

        4. Defendant does not have standing to argue that basing
    punishment upon the weight of the mixture rather than the
    amount of the actual controlled substance is arbitrary and
    irrational.

        5. Defendant was not denied equal protection of the law by

REFERENCES

Am Jur 2d, Appeal and Error §§ 882, 883.
Am Jur 2d, Criminal Law §§ 167, 774, 1002-1005, 1010, 1011.
Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.
Am Jur 2d, Evidence §§ 1125, 1172.
Offense of aiding and abetting illegal possession of drugs or narcot-
    ics. 47 ALR3d 1239.
See also the annotations in the ALR3d/4th Quick Index under
    Appeal and Error; Drugs and Narcotics; Informers; Witnesses.

virtue of the fact that the mandatory minimum sentence for possessing 225 to 650 grams of cocaine is the same as the maximum sentence for those who deliver smaller amounts. Furthermore, he does not have standing to raise the issue.

6. Defendant's sentence does not constitute cruel or unusual punishment.

Affirmed.

1. CRIMINAL LAW — WITNESSES — POLICE INFORMANTS — DISCLOSURE OF IDENTITY.

A defendant is not prejudiced by a trial court's failure to order disclosure of the identity of a confidential police informant where the identity of the informant is already known by the defendant.

2. CRIMINAL LAW — APPEAL — EVIDENCE.

The standard for review of challenges to the sufficiency of the evidence in a trial is that the Court of Appeals must determine whether, considering the evidence in the light most favorable to the prosecutor, a rational trier of fact could find the necessary elements of the crime proven beyond a reasonable doubt; circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense.

3. CRIMINAL LAW — CIRCUMSTANTIAL EVIDENCE — BURDEN OF PROOF.

The prosecutor, in order for a jury to find a defendant guilty on the strength of circumstantial evidence, need only prove his own theory of the case beyond a reasonable doubt; he need not negate every reasonable theory consistent with innocence.

4. CRIMINAL LAW — CONTROLLED SUBSTANCES — COCAINE — POSSESSION WITH INTENT TO DELIVER — ELEMENTS.

Four elements must be shown to support a finding that a defendant directly committed the crime of possession of cocaine with intent to deliver in any mixture of 225 grams or more, but less than 650 grams: (1) the substance involved must be shown to be cocaine; (2) it must be shown that the drug was in a mixture which weighed more than 225 grams but less than 650 grams; (3) the defendant must not be authorized by law to possess the substance; and (4) the defendant must have knowingly possessed the cocaine with the intent to deliver it (MCL 333.7401[1] and [2][a][ii]; MSA 14.15[7401][1] and [2][a][ii]).

5. CRIMINAL LAW — AIDING AND ABETTING — ELEMENTS.

Three elements must be shown to support a finding that a

defendant aided and abetted in the commission of a crime: (1) the crime charged was committed either by the defendant or some other person; (2) the defendant performed acts or gave encouragement which aided and assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement.

6. CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — CONSTITU-
    TIONAL LAW — EQUAL PROTECTION.
    The classification scheme contained in the controlled substances provisions of the Public Health Code whereby the severity of the crime is based upon the weight of a mixture containing a controlled substance rather than on the weight of the pure substance contained in the mixture is related to the object of the legislation and is not violative of equal protection (MCL 333.7401; MSA 14.15[7401]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul L. Maloney,* Prosecuting Attorney, and *Brian S. Berger,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Rolf E. Berg*), for defendant on appeal.

Before: R. B. BURNS, P.J., and GRIBBS and R. I. COOPER,* JJ.

PER CURIAM. Defendant was convicted, by a jury, of possession with intent to deliver cocaine in any mixture of 225 grams or more, but less than 650 grams. MCL 333.7401(1) and (2)(a)(ii); MSA 14.15(7401)(1) and (2)(a)(ii). Defendant was sentenced to imprisonment for not less than twenty years nor more than thirty years, as mandated by statute.

On September 18, 1983, defendant, along with his stepfather, Benito Alvarez, a codefendant who was tried separately, and his mother, arrived in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the Benton Harbor-St. Joseph area from out of town and met up with friends of defendant. They then searched for a motel room and, as Alvarez could not speak English, defendant conducted the inquiries. The party eventually registered at the Red Roof Inn for the period of September 18 through 21. After checking in, defendant left with his friends to play racquetball and then went out on a date.

On September 19, 1983, the Berrien County Sheriff's Department obtained a search warrant for the motel room based upon information from a confidential police informant (CPI) who claimed to have been in the room and observed bags of cocaine which were offered for sale.

Sergeant Stephen Marschke, along with several other officers, executed the warrant on that same day. After knocking and announcing their presence, they entered the room and found defendant lying on one bed and Alvarez on another. From the dresser, they seized a "Chicken McNuggets" box containing two sandwich bags of a white powder, a wallet belonging to Alvarez, a cracker tin and a box of baggies. A triple beam scale was found on the bathroom counter and a second wallet, which belonged to defendant, was found on a nightstand between the two beds. Underneath the bed on which defendant had been lying, the police found a sack with two larger "zip lock" bags of white powder.

The white powder in one baggie was chemically tested and indicated a positive presence of cocaine. The wallet of Alvarez was positioned on top of $134 but no other money was found in the room. In defendant's wallet there was a piece of paper listing dollar amounts and quantities, which was described by Marschke as a drug price list. The trial court had accepted Marschke as an expert in

the field of packaging, sale and distribution of cocaine. No weapons were found in the room.

The combined weight of the controlled substance which was seized totalled 341.7 grams and consisted of approximately seventy-five percent cocaine and twenty-five percent diluent. There was testimony showing that the mixture could have been diluted further before sale in order to increase profits.

Of all the evidence seized, only the baggies of cocaine were tested for fingerprints. A latent print belonging to Alvarez was found on the largest bag. No other prints were found.

On appeal, defendant raises four issues, none of which require reversal.

Defendant first argues that the trial court erred in failing to order the production of the confidential police informant. We begin by noting that defendant does not raise this issue in the context of the failure to produce a res gestae witness. Rather, defendant relies on *People v Stander,* 73 Mich App 617; 251 NW2d 258 (1977). In *Stander,* this Court formulated the appropriate procedure for handling cases where the prosecution refuses a defendant's request to disclose an informant's identity:

> [W]here the government invokes the privilege in the face of a defense request for disclosure, and where the accused is able to demonstrate a possible need for the informant's testimony, the trial judge should require production of the informant and conduct a hearing in chambers, and out of the presence of the defendant. At this hearing the court will have an opportunity to examine the informant in order to determine whether he could offer any testimony helpful to the defense. A record should be made of the *in camera* session and its contents sealed so that only an appellate court will have access thereto. [*Id.,* pp 622-623.]

During the in camera hearing, the trial court must balance the government's interest in nondisclosure against the defendant's right to develop testimony of every witness who may be able to furnish information useful to a defense. The circumstances of each case will determine whether a proper balance favors disclosure or nondisclosure. *Roviaro v United States,* 353 US 53; 77 S Ct 623; 1 L Ed 2d 639 (1957); *Stander, supra.*

Because *Stander* directs the trial court to make a factual finding as to whether the informant should be produced, we will review the trial court's decision to produce or not produce to determine if it is clearly erroneous. MCR 2.613(C).

However, we need not even closely review the transcript of the in camera hearing as subsequent trial testimony rendered the issue moot. At trial, Christopher McCrosky testified as follows:

> *Q.* Where did Roberto say he had come to the Benton Harbor area from?
> *A.* He was in Detroit. I don't know how he got to Detroit, but he came to Detroit from Florida, and then Mark [defendant's friend] and another friend of Mark's [apparently the CPI] went to Detroit, picked him up and came back and then the following day we played the racquetball, and that's when I met him.

This is consistent with a written statement filed by the prosecutor prior to the in camera hearing. That statement indicated that the informant had accompanied defendant from Detroit to Benton Harbor. Moreover, in his brief on appeal, defendant admits that the "identity of the informant is all but stated" in the prosecutor's written statement and that McCrosky's testimony "makes it clear that the identified CPI was well known to a close friend of Defendant."

Thus, we can see no reason why defendant could not simply have subpoenaed the informant. Simply put, defendant cannot be prejudiced by the failure to disclose the identity of a witness whose identity is already known to him. As for the question of the witness being produced by the plaintiff rather than by defendant, as noted above, defendant does not raise a res gestae issue. Therefore, we conclude that, even if the trial court should have ordered the disclosure and production of the informant, any error in the refusal to do so is harmless under the circumstances of this case. In any event, we have reviewed the sealed record of the in camera hearing and conclude that the trial court did not clearly err in its decision.

Defendant next argues that there was insufficient evidence to support both of the prosecution's alternate theories of guilt. We disagree.

The jury was instructed that defendant could be found guilty of possession with intent to deliver cocaine if he either directly committed the crime or aided and abetted in its commission. The jury did in fact return a verdict of guilty, but did not specify on which of the two theories its decision was based. In *People v Gilbert,* 55 Mich App 168, 174; 222 NW2d 305 (1974), lv den 393 Mich 774 (1974), this Court stated:

> When the defendant stands convicted on one of two theories, one of which is permissible and one of which is not, the inability to say for sure on which the conviction rests demands reversal.

Defendant challenges both theories in this case on grounds of insufficiency of evidence. The proper standard of appellate review in cases where a defendant appeals the sufficiency of evidence was set forth in *People v Hampton,* 407 Mich App 354, 368; 285 NW2d 284 (1979):

"In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, *Garcia, supra* [*People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson* [v *Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979)], *supra,* p 319." See also *People v Swinford,* 150 Mich App 507, 511-512; 389 NW2d 462 (1986).

The concept of sufficiency focuses upon whether the evidence, taken as a whole, justifies submission of the case to the trier of fact or requires judgment as a matter of law. Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense. The prosecution, in order for a jury to find a defendant guilty on the strength of circumstantial evidence, need only prove its own theory of the case beyond a reasonable doubt; every reasonable theory consistent with innocence need not be negated. *People v Frank Johnson,* 146 Mich App 429; 381 NW2d 740 (1985).

To support a finding that defendant directly committed the crime of possession of cocaine with intent to deliver in any mixture of 225 grams or more, but less than 650 grams, four elements must be shown. See CJI 12:2:00. First, it must be shown that the substance involved is cocaine. Several experts testified that such was the case. Second, it must be shown that the drug was in a mixture which weighed more than 225 grams but less than 650 grams. Again, an expert witness testified that the total weight of the cocaine mixture seized was 341.7 grams. Third, it must be shown that the

defendant was not authorized by law to possess the substance. Here, defendant does not even allege that he had authority to possess the cocaine. Fourth, it must be shown that the defendant knowingly possessed the cocaine with the intent to deliver it. As proof of this element, the prosecution offered as circumstantial evidence the presence of cocaine under defendant's bed, the motel room in defendant's name, the car outside registered in defendant's name, the drug price list found in defendant's wallet, and the open presence of the triple beam scale and cocaine in the Chicken McNuggets box. There was sufficient evidence on the possession theory to warrant submitting it to the jury.

To support a finding that defendant aided and assisted in the commission of the crime, three factors must be shown. See CJI 8:1:03. First, it must be shown that the crime charged was committed either by defendant or some other person. For the reasons discussed *supra,* the jury could have found that either defendant or Alvarez did have possession of cocaine with intent to deliver. Second, it must be shown that the defendant performed acts or gave encouragement which aided and assisted the commission of the crime. Evidence was presented that the motel room was registered in defendant's name, his car was used, his wallet contained the drug price list, and that he could speak English and Alvarez could not, raising the inference that defendant was the "salesman." Third, it must be shown that the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement. Again, the circumstantial evidence supports a finding of intent or knowledge. The drug price list was in defendant's wallet and the cocaine and

paraphernalia were in plain view. It should also be noted that the court instructed the jury on the intent requirement, i.e., that mere presence was not enough to establish intent. For these reasons, we conclude that a rational jury could find beyond a reasonable doubt that defendant aided and abetted the commission of the crime charged.

Because the evidence supports a finding on both of the alternative theories of defendant's guilt, defendant's conviction need not be overturned on this ground.

Next, defendant argues that he is denied equal protection of the law because of the sentencing scheme embodied in MCL 333.7401; MSA 14.15(7401). Defendant raises three arguments under this issue, none of which merit reversal.

First, defendant argues that cocaine should not be classified with heroin and other narcotics, but rather with the more pharmacologically similar substances, possession of which carries lesser penalties. However in *People v Campbell,* 115 Mich App 369; 320 NW2d 381 (1982), this Court rejected the argument that possession of cocaine cannot be punished the same as possession of heroin. While the *Campbell* Court found it insensible to punish cocaine and heroin possession the same, it found no constitutional violation. 115 Mich App 379.

Briefly considering defendant's more specific argument, that possession of pharmacologically similar substances should be punished similarly, we must reject that argument. In establishing controlled substance laws, the Legislature is not constrained to consider only the pharmacological effect of a drug. Rather, the Legislature may also consider additional social problems posed by a particular substance. For example, the Legislature might conclude that a particular substance is abused to a much greater extent than a similar

drug. This greater abuse may warrant the Legislature's imposition of a harsher punishment for possession of the substance. Similarly, a particular drug may be produced or imported more easily and cheaply than another, thus requiring a greater deterrence under the penal code. On the record and arguments before us, we cannot conclude, as a matter of constitutional law, that the Legislature cannot classify cocaine with heroin under the statute. We must continue to adhere to the decision in *Campbell.*

Defendant's second argument under this issue is somewhat more compelling. Defendant argues that basing punishment upon the weight of the mixture, rather than the amount of the actual controlled substance, is arbitrary and irrational. Indeed, under the statute, a person who possessed 224 grams of pure cocaine would be punished less severely than the person who possessed 225 grams of a mixture containing twenty-five grams of cocaine and 200 grams of a diluent. See MCL 333.7401(2)(a)(ii), (iii); MSA 14.15(749)(2)(a)(ii), (iii). However, the evidence at trial indicates that there was a total of 341.7 grams of mixture divided among four bags of differing sizes with purities ranging from 73.7 percent to 78.6 percent. Therefore, the amount of cocaine in the mixture was between 255.6 grams[1] and 264.2 grams.[2] Even applying a ten percent error rate, which the expert chemist indicated was possible, though the tests were likely more accurate, there was at least 230 grams of cocaine in the mixture.

Accordingly, whether the amount of mixture or the amount of actual cocaine is considered, defendant possessed, or aided and abetted in the possession of, more than 225 grams and falls within the

---

[1] This assumes the larger the bag, the lower the purity.

[2] This assumes that the larger the bag, the greater the purity.

provisions of MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). Even if defendant's argument has merit, he is not the appropriate person to advance it.

Defendant's third argument under this issue is that he is denied equal protection since the mandatory minimum sentence for possessing 225 to 650 grams is the same as the maximum sentence for those who deliver smaller amounts. However, defendant's argument is again premised on the comparison of the person who delivers 225 grams of a diluted mixture with the person who delivers a small amount of pure cocaine. However, as discussed above, defendant is not the appropriate person to raise this argument.

Defendant's final issue on appeal is that his sentence, which is mandated by statute, constitutes cruel or unusual punishment. However, this argument was rejected in *Campbell, supra.*

Affirmed.