# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MATTHEW LUKE HYDE,

Defendant-Appellant.

UNPUBLISHED
October 11, 2018

No. 339225
Grand Traverse Circuit Court
LC No. 17-012624-FC

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of aggravated stalking, MCL 750.411i, arising from 20 phone calls defendant made to his ex-wife while serving a prison sentence for stalking her. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to six to 30 years' imprisonment. We affirm.

## I. BACKGROUND

Defendant and the victim were formerly married and have two children in common, each 10 years old at the time of trial. The victim testified that during the course of their marriage defendant was often violent and was eventually arrested for domestic violence in 2007. Following their divorce, according to the victim, defendant constantly harassed her, in violation of personal protection orders (PPOs) and no-contact orders. His harassing behavior included repeatedly coming to her house at night, pounding on her windows, calling her and her employer, filing false reports concerning her with the police and Child Protective Services, and slashing her tires and their daughter's pool. Defendant was first imprisoned for attempted aggravated stalking and, following his release in 2011, was returned to prison for violating the terms of a no-contact order. After his release from prison the second time, the unwanted contact briefly stopped; however, defendant subsequently resumed contacting the victim in violation of a PPO. And, in 2015, was convicted of and imprisoned for stalking and aggravated stalking.

This case arises out of events during that imprisonment. Over a period of 19 months, despite a court order barring any contact, defendant called the victim from prison 20 times. The victim testified that these calls caused her significant mental anguish, including fear that the harassment might never end.

## II. ANALYSIS

-1-

Defendant argues that the evidence presented at trial was insufficient to sustain a conviction for aggravated stalking. A challenge to the sufficiency of the evidence to support a conviction is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "In determining the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prosecution" in order to "determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Id.* at 175. "Circumstantial evidence and reasonable inferences arising therefrom may constitute satisfactory proof of the elements of the offense." *People v Velasquez,* 189 Mich App 14, 16; 472 NW2d 289 (1991). "In determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016).

Stalking is "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). "Harassment" for this purpose is "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress," but "does not include constitutionally protected activity or conduct that serves a legitimate purpose." MCL 750.411i(1)(d).

Defendant first argues that because he was calling the victim in attempts to reach his children, this conduct could not constitute willful harassment. We disagree.

Conduct that serves a legitimate purpose is "conduct that contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 723; 691 NW2d 1 (2005). In *People v Coones*, 216 Mich App 721, 725-726; 550 NW2d 600 (1996) (opinion by BANDSTRA, J.), this Court recognized the unlawfulness of the defendant's violation of a no-contact order, even if it were for the otherwise legitimate purpose of preserving his marriage. Similarly, in *People v White*, 212 Mich App 298, 311; 536 NW2d 876 (1995), this Court rejected the defendant's argument that his repeated phone calls to his former girlfriend were justified by the legitimate purpose of achieving a reconciliation. Also instructive is *Hayford v Hayford*, 279 Mich App 324, 329, 333; 760 NW2d 503 (2008), in which this Court rejected the defendant's argument that his harassing his son was justified by the purpose of obtaining his son's medical information. This Court noted in particular that publication of a newspaper advertisement about the son was "a highly unusual and extraordinary method" for obtaining medical information, and that even if the defendant "had a partially legitimate motive for the contact, the [factfinder] was entitled to conclude from the evidence that [he] was not acting for a legitimate purpose."

In this case, the jury was clearly justified in finding that defendant was not acting to serve a legitimate purpose. As in *Coones*, 216 Mich App at 725-726, defendant contacted the victim in violation of a no-contact order, which is not legitimate conduct regardless of its purported purpose. As informed by *White*, 212 Mich App at 311, defendant's persistent phone calls were not justified even when attempting family reconciliation. Above all, the jury "was entitled to

conclude from the evidence that [defendant] was not acting for a legitimate purpose." *Hayford*, 279 Mich App at 333.

Defendant also argues that his conduct would not, as a matter of law, cause emotional distress to a reasonable person. Again, we disagree.

The harassment element of stalking requires "two or more acts of unconsented contact that actually cause emotional distress to the victim and would also cause a reasonable person such distress." *Nastal*, 471 Mich at 723; see MCL 750.411i(1)(d). Emotional distress is "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411i(1)(c). Defendant does not dispute that the victim suffered emotional distress. Rather, defendant argues only that the phone calls at issue would not bring about emotional distress in a reasonable person.

Considered without context, it is possible a reasonable person receiving 20 phone calls from the same person over the course of 19 months might well suffer emotional distress. But in this case, the prosecution presented significant evidence of previous violence, abuse, and stalking that defendant perpetrated against the victim. The 20 phone calls defendant made from prison were preceded by his long history of threatening and harassing the victim. Additionally, defendant's calls constituted repeated violations of a no-contact order. Under these circumstances, a rational trier of fact could find that a reasonable person would have found this defendant's repeated phone calls distressing.

We affirm.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica

-3-